UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY E. THORNTON,

                    Plaintiff,           Civil Action No. 16-11717
                                         Honorable Marianne O. Battani
                                         Magistrate Judge David R. Grand
v.

COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [18, 19]

Plaintiff Mary E. Thornton ("Thornton") brings this action pursuant to 42 U.S.C. §
405(g), challenging the final decision of Defendant Commissioner of Social Security
("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and
Supplemental Security Income ("SSI") under the Social Security Act (the "Act").  Both parties
have filed summary judgment motions [18, 19], which have been referred to this Court for a
Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the
Administrative Law Judge's ("ALJ") conclusion that Thornton is not disabled under the Act.
Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment
[19] be GRANTED, Thornton's Motion for Summary Judgment [18] be DENIED, and that,
pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be AFFIRMED.

## II.      REPORT

### A.      Procedural History

On April 11, 2013, and April 30, 2013, Thornton filed applications for DIB and SSI, respectively, alleging a disability onset date of February 4, 2013.  (Tr. 244-57).  These applications were denied initially on August 23, 2013.  (Tr. 179-82, 195-98).  Thornton filed a timely request for an administrative hearing, which was held on April 9, 2014, before ALJ Joseph Donovan, Sr.    (Tr. 66-112).    Thornton, who was represented by non-attorney representative Richard Szydlowski, testified at the hearing, as did vocational expert Michael Klein.  (*Id.*).  On July 10, 2014, the ALJ issued a written decision finding that Thornton is not disabled under the Act.  (Tr. 116-30).  On July 13, 2015, the Appeals Council denied review. (Tr. 59-61).  Thornton timely filed for judicial review of the final decision on May 13, 2016. (Doc. #1).

### B.      Framework for Disability Determinations

Under the Act, DIB and SSI are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps ….  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

   **C.    Background**

        *1.    Thornton's Reports and Testimony*

At the time of the administrative hearing, Thornton was 51 years old, and at 5'5" tall, weighed 240 pounds.  (Tr. 71, 269, 273).  She was single and lived in an apartment with three of her children.  (Tr. 74-75, 274).  She completed high school but had no additional education.  (Tr. 77, 274).  Thornton testified that prior to her February 4, 2013 alleged onset date, she had worked for Wayne State University ("WSU") for about 15 years as a "mail clerk," and about 10 years before that as a custodian.  (Tr. 91-93).  Thornton lost her mail clerk job due to an internal restructuring.  (Tr. 92).  She was allowed to apply for the replacement "mail processor" job, but, despite meeting that job's qualifications, including being able to type 30 words per minute, she was not hired.  (*Id.*).  The only other job in Thornton's union that she could apply for was a lightbulb technician job.  (*Id.*).  WSU hired her for that job, but she held it only from November

2012 to February 4, 2013, because the job required her to regularly climb up and down ladders, which made her dizzy and fatigued and allegedly "deteriorated all of [her] medical conditions[.] (Tr. 89-90). At the time of the hearing, she was receiving long term disability benefits from her former employment. (Tr. 74).

Thornton alleges disability as a result of osteoarthritis (primarily in her right shoulder and both knees), diabetes, hypertension, and an "emotional problem." (Tr. 88, 273). Generally speaking, Thornton indicated that her diabetes and high blood pressure are both poorly-controlled. (Tr. 86-87). She testified that she has difficulty focusing, paying attention, and concentrating, and she also experiences dizziness, blurred vision, and tingling and numbness in her fingers on both hands. (Tr. 76, 83, 84, 87).

Thornton is able to perform some household chores, such as light cleaning, laundry, preparing meals, shopping in stores, paying bills, and handling bank accounts. (Tr. 296-97). She is able to drive, but apparently does not do so very often because of knee and hand pain, and because she feels "sleepy driving." (Tr. 72, 297). She walks without a cane or walker. (Tr. 79). Thornton testified that she can lift 8 pounds with her right hand and 5 pounds with her left hand, and sit for 15 minutes, stand for 15-20 minutes, and walk one block at a time. (Tr. 78-81). She is able to get herself dressed – including fastening zippers and buttons. (Tr. 82).

2.    *Medical Evidence*

The Court has thoroughly reviewed Thornton's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

3.    *Vocational Expert's Testimony*

Michael Klein testified as an independent vocational expert ("VE") at the administrative

hearing.  (Tr. 95-111).  The ALJ asked the VE to imagine a claimant of Thornton's age, education, and work experience who can perform light work, with the following additional limitations:  only occasional climbing of stairs or ramps, balancing, stooping, kneeling, crouching, crawling, and bending; must avoid all unprotected heights, hazardous machinery, and industrial vibrations; limited to simple, repetitive, unskilled tasks in a low-stress environment with no joint tasks or joint decision-making; could have up to frequent interactions with coworkers, supervisors, and the general public; would be off-task up to 7% of the workday, with up to 7% loss of productivity; and would require the full duration of all scheduled breaks.  (Tr. 97-100, 103-04).  The VE testified that the hypothetical individual would not be capable of performing Thornton's past relevant work.  (*Id.*).  However, the VE further testified that the hypothetical individual would be capable of working in the jobs of labeler/marker (17,000 jobs nationally), small products assembler (215,000 jobs nationally), and sorter (180,000 jobs).  (*Id.*).

### D.    The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Thornton is not disabled under the Act.  At Step One, the ALJ found that Thornton has not engaged in substantial gainful activity since February 4, 2013 (the alleged onset date).  (Tr. 118).  At Step Two, the ALJ found that Thornton has the severe impairments of osteoarthritis, diabetes mellitus, essential hypertension, major depressive disorder, and anxiety disorder.  (*Id.*).  At Step Three, the ALJ found that Thornton's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.  (Tr. 119).

The ALJ then assessed Thornton's residual functional capacity ("RFC"), concluding that she is capable of performing light work, with the following additional limitations:  only occasional climbing of stairs or ramps, balancing, stooping, kneeling, crouching, crawling, and

bending; must avoid all unprotected heights, hazardous machinery, and industrial vibrations; limited to simple, repetitive, unskilled tasks in a low-stress environment with no joint tasks or joint decision-making; could have up to frequent interactions with coworkers, supervisors, and the general public; would be off-task up to 7% of the workday, with up to 7% loss of productivity; and would require the full duration of all scheduled breaks. (Tr. 121).

At Step Four, the ALJ determined that Thornton is not capable of performing her past relevant work. (Tr. 128). At Step Five, he concluded, based in part on the VE's testimony, that Thornton is capable of performing a significant number of jobs that exist in the national economy. (Tr. 129). As a result, the ALJ concluded that Thornton is not disabled under the Act. (Tr. 130).

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)

(internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

### F.    Analysis

In her motion, Thornton argues that:  (1) remand is warranted under sentence six of 42

7

U.S.C. § 405(g) for consideration of additional evidence; (2) the ALJ erred in evaluating her subjective complaints; and (3) the ALJ erred in giving "minimal weight" to the opinions of her treating physician.  Each of these arguments is addressed below.

### 1.    Thornton is Not Entitled to a Sentence Six Remand

Thornton first argues that this case should be remanded pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of additional evidence first submitted to this Court.  (Doc. #18 at 14-18).  Specifically, Thornton directs the Court's attention to (1) a January 8, 2016 report of a consultative examination conducted by Jai Prasad, M.D. in conjunction with her subsequent application for benefits; (2) a supplemental report of "current" abilities completed by Dr. Prasad on that date; (3) a range of motion chart also dated January 8, 2016; and (4) an x-ray of her lumbar spine taken on January 12, 2016.  (Doc. #14-1).  Thornton argues that remand for consideration of this new evidence is warranted primarily because it confirms a diagnosis of carpal tunnel syndrome ("CTS") and, thus, lends support to her subjective complaints of difficulty using her hands.  (Doc. #18 at 17).  The Court disagrees.

Remand to consider additional evidence is appropriate only when the evidence is new and material, and good cause is shown as to why it was not presented at the prior proceeding. *See* 42 U.S.C. § 405(g); *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984).  Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding."  *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).  Here, the documents at issue are dated January 8, 2016 and January 12, 2016 (Doc. #14-1); thus, they can be considered "new" evidence, as they did not exist at the time of the April 2014 hearing.  For the reasons set forth below, however, Thornton has not shown that these records are "material" or established "good cause" for her delay in submitting them.

a.      *Materiality*

Thornton argues that this evidence is material because it confirms a diagnosis of CTS and, thus, lends support to her subjective complaints of difficulties using her hands.  (Doc. #18 at 17).  But, courts have held that additional evidence is material only if there is "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988).  In this case, the records at issue – which were generated as a result of a consultative examination conducted in January 2016 – are not material because they discuss Thornton's CTS some *eighteen months* after the date of the ALJ's decision and give no indication whether (or how) this condition affected her during the relevant period.  *See Emmons v. Comm'r of Soc. Sec.*, 2014 WL 1304936, at *3 (E.D. Mich. Feb. 13, 2014) (denying remand where new evidence did not discuss claimant's condition between the alleged onset date and the date of the ALJ's decision); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (newly submitted evidence was not material where the evidence pertained to a time outside the period adjudicated by the ALJ).

Thornton argues that "the issue [of materiality] is not properly determined by the date of the evidence, but by whether its content is relevant in some manner to the period at issue."  (Doc. #21 at 2).  She further asserts that the ALJ discussed her allegations of "hand problems during the relevant period, but [] did not assess associated limitations due to a lack of objective evidence," and she claims the new evidence "provides missing information about the cause and nature" of her hand problems.  (*Id.* at 2, 3).  This argument misses the mark.

The ALJ discussed the evidence pertaining to Thornton's hand complaints in his decision, noting that, in July 2012 (prior to the alleged onset date), an x-ray of her left hand

showed only minimal degenerative changes. (Tr. 124 (citing Tr. 343)). The ALJ also noted that, other than once in February 2013 (Tr. 356, 632), Thornton did not complain of hand pain to her doctor during the period in question. (Tr. 126). In addition, the ALJ cited Thornton's testimony that although she got help at times, she was generally able to zip, button, and buckle her clothing. (Tr. 123 (citing Tr. 82)). In other words, the evidence from the period at issue fails entirely to support Thornton's claim that her CTS caused significant limitations; there is no indication that the newly submitted evidence relates to the period under review; and Thornton has not "adequately explain[ed] why or how the records submitted would have reasonably persuaded the ALJ to make a different decision for the period at issue[.]"[1] *Richardson v. Comm'r of Soc. Sec.*, 2012 WL 4210619, at *5 (E.D. Mich. Aug. 27, 2012). Accordingly, Thornton has not established that the new evidence is material.

b. *Good Cause*

Thornton also has failed to establish good cause for her failure to submit these new records sooner. "Good cause" requires a claimant to demonstrate "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357. As this Court has recognized, "'Good cause' is *not* established solely because the new evidence was not generated until after the ALJ's decision; the Sixth Circuit has taken a 'harder line' on the good cause test." *Richardson*, 2012 WL 4210619, at *4 (quoting *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)) (emphasis in original). A plaintiff attempting to introduce new evidence "must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision." *Id.* at *4.

---

[1] Notably, while the supplemental report of "current" abilities indicates that, as of January 2016, Thornton could not button clothes or tie her shoes, and that she could not squat and arise from squatting, she was able to perform all other noted functions. (Doc. #14-1 at 5). In addition, she had normal range of motion in her wrists, hands, and fingers. (*Id.* at 8).

Here, Thornton asserts that the documents at issue were generated as a result of a consultative examination ordered by the Commissioner in conjunction with a subsequent application for benefits.  (Doc. #18 at 18).  She argues that because no consultative examination was ordered in connection with her original claim, "which could have resulted in an earlier diagnosis," and because she lacked health insurance or the funds to obtain such an examination herself, the Court "should find that good cause exists for the late submission of this evidence." (*Id.*).  The Court disagrees.

As an initial matter, Thornton concedes that the ALJ was not *required* to obtain a consultative examination in order to determine whether she had CTS, instead arguing – without citation to case law – that, because the ALJ *could have* ordered such an examination, good cause exists for her failure to present this evidence sooner.  (Doc. #21 at 4).  The Court finds no merit to this argument, as it would essentially eviscerate the "good cause" standard and excuse the late submission of any subsequently-acquired medical evidence in cases where no consultative examination was ordered.

Moreover, as the Commissioner points out, there is nothing that would have prevented Thornton from obtaining an evaluation of her alleged CTS at an earlier point in time, even from her primary care physician.  (Doc. #19 at 9).  While Thornton may have lost her health insurance in September 2013 (Doc. #18 at 18; Tr. 83-84), she visited the emergency room in December 2013 (Tr. 543-45) and subsequently obtained medical care on several occasions in 2014 (Tr. 551-60, 570-72).   Thornton argues that just because she obtained some medical care does not necessarily mean that she "could afford a non-emergent evaluation of her carpal tunnel impairment."  (Doc. #21 at 3).  While this might be true, the fact that she did not even mention hand problems or complain of CTS-related symptoms at any of these visits suggests that they

were not as problematic as she now claims.

For all of these reasons, Thornton has not established good cause for her failure to submit the new evidence sooner, nor has she shown a reasonable probability that the Commissioner would have reached a different conclusion on the issue of disability for the relevant period if presented with the proffered new evidence.  As such, she is not entitled to a sentence six remand.

> 2.     *The ALJ's Assessment of Thornton's Subjective*
> *Complaints is Supported by Substantial Evidence*

Thornton also argues that the ALJ erred in evaluating her subjective complaints.  (Doc. #18 at 18-23).  Courts have recognized that determinations of credibility related to a claimant's subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'"  *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)).  Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  When a complaint of pain or other symptom is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must then consider other evidence of pain, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication; (5) treatment, other than medication, received; (6) any means used to relieve pain; and (7) other factors concerning functional limitations.  *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Here, the ALJ found that Thornton's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, he also found that Thornton's statements concerning the intensity, persistence, and limiting effects of these symptoms were not

entirely credible.  (Tr. 126).  In making that finding, the ALJ considered the objective medical evidence; Thornton's testimony about her symptoms, including their nature and location; her alleged limitations; her treatment history; her medications; and her daily activities.  (Tr. 121-27).  Thornton now raises a few specific challenges to the ALJ's credibility determination.

### a.    Non-Compliance with Treatment

First, Thornton argues that the ALJ erred in discounting her subjective complaints because of "persistent noncompliance" with "medications and dietary and lifestyle modification."  (Doc. #18 at 19 (citing Tr. 126)).  "The Sixth Circuit recognizes that a claimant's failure to follow prescribed treatment is evidence supporting an ALJ's factual finding that the claimant's testimony was not fully credible."  *Lemle v. Comm'r of Soc. Sec.*, 2012 WL 1060111, at *9 (E.D. Mich. Jan. 27, 2012).  Here, however, Thornton asserts that the ALJ should have considered the impact of her mental impairments on her ability to comply with her treatment regimen.  (Doc. #18 at 19).  In support of this argument, Thornton references her own testimony and reports that she has difficulty focusing and concentrating and has a poor memory.  (*Id.* (citing Tr. 76, 84, 294, 296, 308)).  She also asserts that her treating physician, May Antone, M.D., "indicated in her notes that Ms. Thornton seemed to have difficulty understanding how to take her medications according to instructions, as well as knowing how to properly take her blood pressure at home."  (*Id.* (citing Tr. 373, 374, 379, 456, 466, 467, 470, 473, 474)).[2]

There are several problems with this argument.  First, while there were a few instances

---

[2] Thornton also cites a form entitled "Mental Effects of Pain," dated April 16, 2014, on which she claims that Dr. Antone opined that she "has 'significant handicap with sustained attention and concentration' which would impact her ability to comply with her treatment regimen." (Doc. #18 at 19 (citing Tr. 648)).  But, Dr. Antone offered no such opinion; rather, she opined only that Thornton's attention/concentration deficits would eliminate *skilled work tasks*.  (Tr. 648).  Moreover, the ALJ gave good reasons for affording this opinion only minimal weight, and his evaluation of this opinion is supported by substantial evidence, *infra* at 19-20.

where Thornton indicated she did not take her medications because she either thought they would lower her blood pressure too much, the pharmacist allegedly told her not to take them, or she did not realize she was supposed to be taking a certain medication along with others (Tr. 373, 437, 466), many of the records cited by Thornton indicate that she was failing to comply with her treatment regimen (including both medication and dietary/lifestyle recommendations) as a result of something other than her mental impairment. (*E.g.,* Tr. 379 ("she is taking metformin 1000 mg once a day only and Glucotrol 5 mg once only"; no indication as to *why* she did not take these medications as prescribed); 456 ("she stopped taking verapamil because it makes her feel tired and drained, she is taking the catapress [sic] once instead of twice/day"); 470 ("she is not taking verapamil" and "is taking metformin 1000 mg and Glucotrol in am only (instead of twice)"); 473 ("pt still [has] not been taking her diabetes pills twice (only once) despite our conversation about the importance of taking her medication the way it is prescribed"); 481 (since last visit, stopped metoprolol and "never started her statin therapy"; also "[n]ot very compliant with diet and has gained weight"); 543 ("also has not been taking her blood pressure medication")).

Moreover, contrary to Thornton's assertion that her mental impairment may have affected her ability to comply with her treatment regimen, there is simply no indication from the record that she was mentally unable to understand her treatment. As the Commissioner points out:

> During examinations, she was routinely found to be alert and fully oriented (Tr. 356, 365, 373, 376, 379-380, 436, 453, 457, 467, 474, 483, 493-494, 505, 512, 542, 556, 571, 576, 578, 580, 583, 586, 588, 595-596, 603, 607, 614-615, 617, 620-621, 632). She was of average intelligence (Tr. 518). A psychiatric specialty examination showed that she had fair to good insight and judgment, and intact memory and attention/concentration (Tr. 516). She was generally able to measure her blood pressure at home without problem as long as the machine was working, she evidenced an understanding of a change in her medications, and she was able to perform activities such as driving and managing her finances (Tr. 297, 365, 374,

376-377, 379-380, 439, 456-457, 466, 470, 473, 587, 589, 595-596, 602-603, 614-617, 620-621).

(Doc. #19 at 14).  Based on all of this evidence, the Court finds no error in the ALJ's failure to explicitly discuss whether Thornton's mental impairment may have impacted her ability to comply with prescribed treatment.  *See Smith-Marker v. Astrue*, 839 F. Supp. 2d 974, 983-84 (S.D. Ohio 2012) (where there was "lack of substantial evidence in the record to support a finding that Plaintiff's failure to take her medication [was] related to her depression," ALJ did not err in failing to consider how her mental impairment affected her noncompliance with prescribed treatment).  Moreover, the ALJ relied on several other factors in finding that Thornton was not fully credible, *infra* at 15-18, each of which finds support in the record.   Thus, Thornton's noncompliance with medication and other prescribed treatment was only one aspect of the ALJ's credibility determination.  As such, even if the Court had found that the ALJ erred in considering Thornton's failure to take certain medications or adopt certain dietary and lifestyle modifications, any such error is harmless.  *See, e.g., Tate v. Comm'r of Soc. Sec.*, 2014 WL 4536929, at *8 (E.D. Mich. Sept. 11, 2014) (even if ALJ erred in discounting claimant's credibility for medication non-compliance, such an error was harmless where the ALJ provided other evidentiary support for credibility determination).

### b.      Other Factors

Thornton raises several additional challenges to the ALJ's credibility determination, asserting that he "failed to address" most of the regulatory factors set forth in 20 C.F.R. §§ 404.1529(c), 416.929(c).  (Doc. #18 at 21-23).

First, Thornton claims that the ALJ failed to consider her testimony as to the alleged side effects of her medications – namely, drowsiness and dizziness.  (*Id.* at 22).  This is incorrect:  the ALJ specifically noted that Thornton routinely failed to report dizziness to her doctor (in fact,

she routinely denied experiencing dizziness).  (Tr. 126, 365, 373, 376, 456, 470, 481, 575, 579,

587, 589, 602, 616, 619, 621).  Likewise, despite now complaining of drowsiness, the medical

record shows that she routinely denied experiencing fatigue.  (Tr. 383, 466, 481, 526, 553, 595).

Thus, the Court finds no error in the ALJ's evaluation of Thornton's complaints of drowsiness or

dizziness.  *See, e.g., Essary v. Comm'r of Soc. Sec.,* 114 F. App'x 662, 665-66 (6th Cir. 2004)

("Although Essary testified that she suffered from dizziness and drowsiness as a result of her

medications, Essary's medical records make no indication that Essary reported such side effects

to any of her physicians.  Thus, based on the record before him, the ALJ did not err in finding

that Essary suffered no adverse side effects from her medications."); *Hopkins v. Comm'r of Soc.

Sec.,* 96 F. App'x 393, 395 (6th Cir. 2004) ("There was no evidence of side effects that would

prevent Hopkins from engaging in gainful activity.  Although Hopkins complained of

drowsiness, nausea, and blurred vision, these conditions were not documented in the record.").[3]

Thornton also challenges the ALJ's consideration of her daily activities and his

observation that they were "not as limited as one would expect," given her allegations of

disability.  (Doc. #18 at 22-23).  Courts have recognized that an ALJ may consider a claimant's

household and social activities in evaluating her complaints of disabling pain.  *See Cruse v.

Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007).  Here, the ALJ noted that Thornton's

daily activities included attending to her own personal care, preparing meals, doing light

household chores, going outside, driving, shopping, managing her finances, and talking on the

phone.  (Tr. 126 (citing Tr. 294-304)).  The ALJ also acknowledged that Thornton had some

limitations in this respect (for example, she needed "some assistance" with her hygiene at times

---

[3] Moreover, the ALJ discussed Thornton's complaints of dizziness and fatigue elsewhere in the decision (Tr. 123-26), and he appears to have given her the benefit of the doubt in some respects by limiting her to no exposure to unprotected heights or hazardous machinery in his RFC determination (Tr. 121).

and only performed chores "thirty minutes a day").   (Tr. 126).   While the ALJ did not specifically mention Thornton's statement that she prefers not to drive alone (Doc. #18 at 22 (citing Tr. 297)), this omission is harmless where the ALJ acknowledged that Thornton had some limitations in her ability to perform some activities, and the ALJ's credibility finding is otherwise supported.   *See Stephenson v. Comm'r of Soc. Sec.*, 635 F. App'x 258, 263 (6th Cir. 2015) ("harmless error analysis applies to an ALJ's credibility determination in a social security case").

Finally, Thornton argues that the ALJ erred in citing her dissatisfaction with her most recent job (as a light technician) in assessing her subjective complaints, asserting that the ALJ should not have ignored her "extremely solid work history due to speculation about dissatisfaction with one job."   (Doc. #21 at 7).   But, in noting that Thornton "was unhappy that her job was eliminated and [] did not care for her replacement job as a light bulb technician," the ALJ was not merely speculating, but was referencing Thornton's own statements.   (Tr. 127 (citing Tr. 383, 534, 537)).   Moreover, the regulations expressly permit an ALJ to consider "other factors" such as this in evaluating a claimant's subjective complaints.   *See* 20 C.F.R. §§ 404.1529(c)(3)(vii), 416.929(c)(3)(vii).   And, while it is true that a strong work history may support a claimant's credibility, *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994), an ALJ is not *required* to find a claimant with a strong work history fully credible, nor may the Court reweigh evidence in this regard.   *See Ferguson v. Comm'r of Soc. Sec.*, 2014 WL 1030840, at *11 (E.D. Mich. Mar. 14, 2014) ("Plaintiff essentially asks the Court to re-weigh the evidence; however, this Court's scope of review is limited, and the Court will not disturb the ALJ's credibility determination absent a compelling reason.").   To that end, the issue here cuts both ways; although Thornton clearly had a commendable work history, she testified that she stopped

17

working at her most significant recent employment – as a mail clerk – not because she was physically or mentally unable to continue performing that job, but because her position was eliminated in a restructuring.   (Tr. 89-93).   Indeed, Thornton testified that she met the requirements (including being able to type 30 words per minute) of the replacement "mail processor" job, and applied for that job, but was simply not selected for it.  (Tr. 92).[4]  The ALJ did not err in his consideration of this issue.

For all of the above reasons, Thornton's challenges to the ALJ's evaluation of her subjective complaints are not persuasive.

### 3.     Substantial Evidence Supports the ALJ's Decision to Afford "Minimal Weight" to the Opinions of Thornton's Treating Physician

Thornton also argues that the ALJ erred in affording minimal weight to the opinions of her treating physician, Dr. May Antone, and in failing to give good reasons for discounting these opinions.  (Doc. #18 at 23-25 (citing Tr. 127-28, 572, 593, 594, 640-643)).

Courts have recognized that an ALJ "'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'"   *Blakley*, 581 F.3d at 406 (internal quotations omitted).   While treating source opinions are entitled to controlling weight under these circumstances, it is "error to give an opinion controlling weight simply because it is the opinion of a treating source" unless it is well-supported and consistent with the record as a whole.  *Soc. Sec. Rul. 96-2p*, 1996 WL

---

[4] Although Thornton testified that the three months she subsequently worked in the lightbulb technician job made her dizzy and fatigued, and "deteriorated all of [her] medical conditions" (Tr. 89-90), the record does not support any such impact on her.  (*See, e.g.*, Tr. 356 (2/5/13 treatment record finding "normal strength, tone and reflexes, motor strength normal upper and lower extremities…"), 365 (2/11/13 treatment record indicating "doing well" and normal extremity function), 373-74 (2/12/13 treatment record indicating "no dizziness" and normal extremity function)).

374188, at *2 (July 2, 1996); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("Treating physicians' opinions are only given such deference when supported by objective medical evidence.").   If the ALJ declines to give a treating physician's opinion controlling weight, he must document how much weight he gives it, considering a number of factors, including the "length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. §404.1527(c)(2) (ALJ must "give good reasons" for weight given to treating source opinion)).

With respect to several of the opinions cited by Thornton – a disability parking placard application, a long-term disability application, and other blanket statements saying she was unable to work (Tr. 572, 593-94, 640-43) – the ALJ found that they were "conclusory and based not on observed clinical findings but rather the claimant's self-report of symptoms"[5] and that they were directed at programs with different eligibility and evidentiary standards.   (Tr. 127). These were proper considerations. *See, e.g., Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 (6th Cir. 2009) ("Here, substantial evidence supports the ALJ's determination that the opinion of Dr. Boyd, Poe's treating physician, was not entitled to deference because it was based on Poe's subjective complaints, rather than objective medical data."); 20 C.F.R. §§ 404.1504, 416.904 (a disability determination by another agency is "based on its rules" and, therefore, is not binding

---

[5]  Thornton challenges this finding, asserting that "the record contains objective findings supportive of Dr. Antone's opinion."   (Doc. #18 at 24).   Thornton points out that Dr. Antone cited Thornton's bilateral knee osteoarthritis, claiming this condition is "confirmed by x-rays documenting 'mild to moderate' degenerative arthritic changes in [her] bilateral knees."   (*Id.*). However, the x-rays referenced by Thornton were from September 2009 (Tr. 326), more than three years before she stopped working, and thus hardly support a finding that her knee pain was disabling.

on the Social Security Administration).[6]   In addition, to the extent Dr. Antone opined that Thornton was disabled or unable to work, such opinions were not medical opinions at all, but, rather, were opinions on the ultimate issue of disability, which is an issue reserved to the Commissioner.  *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1))).

As for the Physical Capacities Evaluation completed in April 2014 (Tr. 644-48), Dr. Antone opined on that form that Thornton could sit, stand, and walk for only one hour per day; could engage in simple grasping and fine manipulation, but not pushing or pulling; and could only occasionally lift ten pounds.  (Tr. 644-45).  The ALJ considered this opinion, assigning it minimal weight because Dr. Antone did not explain the need for the severe restrictions noted, and because the restrictions were inconsistent with her own treatment notes.  (Tr. 127-28).  These reasons find ample support in the record, as the evaluation consisted of mainly a "check-box"-type form (Tr. 644-48), and Dr. Antone's treatment notes repeatedly evidence largely normal physical examinations, with only a few instances of knee or back pain documented (Tr. 355-56, 365, 373-74, 376-77, 379-80, 384, 453, 457, 467, 474, 487, 571, 576, 580).  *See Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566-67 (6th Cir. 2016) ("Many courts have cast doubt on the usefulness of these forms and agree that administrative law judges may properly give little weight to a treating physician's check-off form of functional limitations that did not cite clinical test results, observations, or other objective findings ….") (internal quotations omitted) (citing cases); *Leeman v. Comm'r of Soc. Sec.*, 449 F. App'x 496, 497 (6th Cir. 2011) ("ALJs may discount treating-physician opinions that are inconsistent with substantial evidence in the record,

---

[6] It is also noteworthy that when Dr. Antone completed the parking placard form, she indicated that Thornton's condition (bilateral knee osteoarthritis) was "temporary" and expected to last only six months.  (Tr. 572).  Similarly, on the WSU Long Term Disability application, Dr. Antone indicated that medical improvement was possible, and that Thornton should engage in "physical therapy for the knee."  (Tr. 594).

like the physician's own treatment notes).[7]  Thus, the Court finds no error warranting remand in the ALJ's evaluation of Dr. Antone's opinions.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III.   CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [19] be GRANTED, Thornton's Motion for Summary Judgment [18] be DENIED, and the ALJ's decision be AFFIRMED.


Dated: May 17, 2017                         s/David R. Grand
Ann Arbor, Michigan                         DAVID R. GRAND
                                            United States Magistrate Judge


## NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991);

---

[7] Thornton points to Dr. Antone's opinion that her uncontrolled diabetes, high blood pressure, and blood pressure medication cause fatigue and drowsiness that would preclude even sedentary work.  (Doc. #18 at 25 (citing Tr. 646)).  As set forth above, however, Thornton routinely denied fatigue and dizziness at visits to Dr. Antone, *supra* at 15-16, which further supports the ALJ's conclusion that Dr. Antone's opinion was inconsistent with her own treatment notes.

*Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to

E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.


## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 17, 2017.

s/Eddrey O. Butts_____
EDDREY O. BUTTS
Case Manager
